UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY JO KRENZ, | Case No. EDCV 13-01899 AN |
| Plaintiff, | MEMORANDUM AND ORDER |
| v. | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

Pursuant to the Court's Case Management Order, the parties have filed the Administrative Record ("AR") and a Joint Stipulation ("JS") raising two disputed issues. The parties have consented to proceed before the Magistrate Judge. The Court has carefully reviewed the parties' respective contentions in conjunction with the AR. This matter is now ready for decision.

**Issue #1**

Plaintiff contends that the Administrative Law Judge ("ALJ") improperly rejected medical evidence establishing that Plaintiff suffers from the medically determinable impairment of fibromyalgia. (JS 4-10; AR 19.) The Court agrees.

A medically determinable impairment is one that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 416.908,

416.920a(b)(1). As there are no laboratory tests to confirm the diagnosis of fibromyalgia, it "is diagnosed entirely on the basis of patients' reports of pain and other symptoms." *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004) ("Fibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community.").

Plaintiff's medical records show that Plaintiff has been consistently diagnosed with fibromyalgia since 2002. (AR 211, 217, 221, 223, 237-38, 244, 249, 275-77, 282, 284, 286, 291, 303, 331, 346-49, 354, 356, 358, 407, 410, 422-23, 425-26, 443, 456, 460, 464, 467, 485-86, 490-91, 523-24, 527, 535, 543, 547, 553, 586, 605, 624, 665, 678, 684, 687, 694, 698, 700.) Records from Plaintiff's treating physicians document symptoms confirming the fibromyalgia diagnosis. Rheumatologist Biramjit Ahluwalia M.D. noted the presence of tender points in January 2012. (AR 491.) Similarly, Plaintiff's treating physician, Stephen Owen, M.D., reported on the presence of paired tender points, as well as Plaintiff's frequent and persistent complaints of body pain, fatigue, and tenderness in the joints. (AR 356, 524, 530, 534, 535, 541, 547, 552, 575, 605); *see Benecke*, 379 F.3d at 590 (Common symptoms of fibromyalgia "include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease."). Plaintiff's doctors prescribed medications to treat Plaintiff's pain and symptoms, including those specific for treating Plaintiff's fibromyalgia. (AR 70-73, 357, 506, 524-25, 536-38, 606-07, 700-01.) The opinions of the consultative examiners also confirmed Plaintiff's fibromyalgia diagnosis. In June 2011, an examining internist noted Plaintiff's history of fibromyalgia and reported that Plaintiff had mildly diffuse pain and tender points. (AR 410.) Likewise, in November 2009, another consultative examiner noted that Plaintiff had suffered from fibromyalgia since 2002, and had complaints of joint pain, muscle achiness, palpation pain, range of motion pain, and almost daily flare-ups in her condition. (AR 666.)

The ALJ found that fibromyalgia did not constitute a medically determinable

Page 2

impairment.[1] (AR 13, 19.) Although the ALJ acknowledged that the medical records reflect that Plaintiff has repeatedly been diagnosed with fibromyalgia, the ALJ questioned the validity of the diagnosis. (AR 19.) The ALJ cited a lack of medical evidence of bilateral tender points since the application date, and noted that there was no indication that other conditions were ruled out before the fibromyalgia diagnosis was made. (AR 19.)

The ALJ improperly rejected the opinion evidence diagnosing Plaintiff with fibromyalgia. (AR 19.) Contrary to the ALJ's finding, Plaintiff's treating physicians diagnosed Plaintiff with fibromyalgia after noting tender points on examination. (AR 356, 491, 575, 605.) The consultative physicians also confirmed Plaintiff's history of fibromyalgia. (AR 410, 665.) To the extent the ALJ rejected fibromyalgia as a medically determinable impairment because the specific number of Plaintiff's tender points was not reported by Plaintiff's doctors, the ALJ erred. *See Benecke*, 379 F.3d at 594 ("The ALJ erred by effectively requiring objective evidence for a disease that eludes such measurement.") (internal quotation marks and citation omitted); *Cable v. Astrue*, No. CIV S-06-0515 DAD, 2007 WL 2827798, *6 (E.D. Cal. Sept.27, 2007) (the ALJ erred in rejecting plaintiff's treating physician's diagnosis of fibromyalgia because he "failed to record a specific number of trigger points"). The ALJ should have developed the record further if he had questions about the presence of tender points or other related conditions to support the fibromyalgia diagnosis. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" (citation omitted)); *see Dillon v. Astrue*, No. CV 09-7272-PLA, 2010 WL 2850910, at *6 (C.D. Cal. July 19, 2010) ("It was the ALJ's duty to further develop the record if she felt that a specific finding of the number of trigger

---

[1] The ALJ determined that Plaintiff's severe impairments consisted of degenerative disk disease of the lumbar spine, right shoulder impairment, obesity, bilateral carpal tunnel syndrome, and osteoarthritis. (AR 13.)

Page 3

points was necessary."); *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996). Though Plaintiff's physicians failed to explicitly state the number or placement of Plaintiff's tender points, the ALJ's suggestion that the record contained no findings clinically indicative of fibromyalgia was erroneous.

The ALJ's assertion that Plaintiff's doctors simply accepted the fibromyalgia diagnosis without ruling out other conditions is also unsupported by the record. (AR 19.) In addition to conducting tender points analyses, Plaintiff's doctors ordered lab tests and other studies to determine possible causes of Plaintiff's pain and symptoms. (AR 487-90, 493-500, 501-04, 590, 626-27.) Instead of conclusively establishing the presence of fibromyalgia, objective tests are administered to rule out other diseases and alternative explanations for the pain, but such tests do not establish the presence or absence of fibromyalgia, as it cannot be objectively proven. *See Jordan v. Northrop Grumman Corp.*, 370 F.3d 869, 873, 877 (9th Cir. 2003), *overruled on other grounds by Abatie v. Alta Health & Life Insurance*, 458 F.3d 955, 970 (9th Cir. 2006) (en banc). Moreover, a diagnosis of fibromyalgia necessarily must be based on the patient's reports of pain. *Benecke*, 379 F.3d at 589-90. It cannot be objectively proven. *Jordan*, 370 F.3d at 877; *see also Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001) (recognizing that the accepted diagnostic standard for fibromyalgia is met if the claimant has 11 of 18 tender points).

The Commissioner argues that even if the ALJ erred in failing to find fibromyalgia to be a medically determinable impairment, the error was harmless. (JS 11-12.) The Commissioner asserts that the ALJ's residual functional capacity ("RFC") assessment reasonably accommodated all of Plaintiff's pain and reported symptoms.[2] (JS 13-14.)

---

[2] The ALJ determined that Plaintiff is capable of performing light work limited by the following: frequent but not constant bilateral fine and gross manipulation; occasional above the shoulder reaching with the right upper extremity; occasional climbing of ramps and stairs; and occasional balancing, stooping, kneeling, crouching, and crawling. (AR 14); 20 C.F.R. § 416.967(b). The ALJ further found that Plaintiff is precluded from performing work involving forceful gripping, grasping, twisting bilaterally, climbing
(continued...)

While Plaintiff does suffer from other medically determinable conditions (carpal tunnel syndrome, degenerated discs, osteoporosis), it is not clear from the record whether the pain associated with these other conditions is the same as the pain associated with her fibromyalgia, or whether the ALJ properly considered the limitations associated with Plaintiff's fibromyalgia in the RFC. Because proper consideration of Plaintiff's fibromyalgia could result in a different RFC, the ALJ's error was not harmless.

Accordingly, remand is warranted on Issue #1.

**Issue #2**

Plaintiff contends that the ALJ improperly rejected her subjective complaints. (JS 14-17.) Plaintiff testified that she needs to lie down at least two hours a day due to relieve pressure on her hips and back. (AR 45.) Plaintiff reported that her symptoms include: pain in her shoulders, back, neck, wrists, hands, fingers, hips, knee, and muscles; numbness and tingling in her hands, fingers, face, legs, and feet; problems walking, sitting, lifting things over her head, squatting, and bending; difficulty sensing hot and cold temperatures; poor focus and concentration; and fatigue and sleepiness. (AR 15-16, 34-37, 41-46, 48.)

The ALJ found Plaintiff's allegations concerning the intensity, persistence and limiting effects of her symptoms not credible to the extent they are inconsistent with her RFC for a range of light work. (AR 14, 16.) Because the ALJ improperly rejected Plaintiff's fibromyalgia as a medically determinable impairment, the ALJ necessarily failed to consider fibromyalgia in assessing Plaintiff's subjective complaints of pain. *See Cotton v. Bowen*, 799 F.2d 1403, 1407-08 (9th Cir. 1986) (explaining that under the first step of the credibility analysis, the claimant must produce objective medical evidence of an underlying "impairment," and must show that the impairment, or a combination of impairments, "could reasonably be expected to produce the pain or other symptoms");

---

[2]/ (...continued)
ladders, ropes and scaffolds, and exposure to unprotected heights and dangerous machinery. (AR 14.)

*Smolen*, 80 F.3d at 1281-82 (explaining that the ALJ must engage in a two-step analysis in deciding whether to accept as credible a claimant's symptom testimony). Moreover, the ALJ's stated reasons for rejecting Plaintiff's credibility were not clear and convincing. *See Rollins*, 261 F.3d at 858 (explaining that if there is no affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting Plaintiff's pain and/or symptom testimony); *Smolen*, 80 F.3d at 1283-84.

The ALJ discounted Plaintiff's subjective symptom testimony largely because of a lack of objective evidence or medical findings. (AR 18-20.) However, as discussed above, there are no objective tests that conclusively confirm the disease of fibromyalgia. *Benecke*, 379 F.3d at 590; *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996). Thus, requiring objective evidence for a disease that eludes such measurement was inappropriate.

The ALJ further found Plaintiff's testimony unreliable because she was able to participate in daily activities, including shopping, cooking, cleaning, and doing laundry with her adult daughter's assistance, caring for a new puppy, driving to therapy classes, and walking 20 minutes four times a week at a moderate to strenuous level. (AR 18, 20.) However, the ALJ failed to explain how Plaintiff's ability to engage in these activities translated into the ability to perform appropriate work activities on an ongoing and daily basis. (AR 18, 20); *see Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (daily activities may not be relied upon to support an adverse credibility decision where those activities do not affect the claimant's ability to perform appropriate work activities on an ongoing and daily basis); *cf. Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir. 1989) ("[I]f a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain."). Disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.1998).

Next, the ALJ characterized Plaintiff's treatment regimen as conservative. (AR 19-

20.) Though the ALJ correctly noted that Plaintiff was successfully able to eliminate her dependence on one opioid medication (Oxycontin), the ALJ's suggestion that Plaintiff's prescribed treatment was less aggressive than other viable, available treatments is not supported by the record. (AR 18, 20.) Plaintiff has followed the recommended course of treatment for her fibromyalgia by consistently taking a number of medications (i.e., Gabapentin, Cyclobenzaprine, Meloxicam, Trazodone, Topiramate, Tramadol) to treat her pain and fibromyalgia related symptoms. (AR 70-73, 506, 700-01.) There is no evidence that surgery or more intensive treatment was recommended or available to treat her condition. *See Benecke*, 379 F.3d 587, 590 (9th Cir. 2004) (fibromyalgia is a disease "poorly-understood within much of the medical community" and for which "there is no cure"); *Lapeirre-Gutt v. Astrue*, 382 Fed. Appx. 662, 664 (9th Cir. 2010) ("A claimant cannot be discredited for failing to pursue nonconservative treatment options where none exist.").

The ALJ also implicitly found that Plaintiff contributed to her symptoms of fatigue and drowsiness by taking Zyrtec and many of her pain medications in the morning. (AR 20, 48-59.) However, the time of day when Plaintiff takes her medications and the fact that Plaintiff's medications cause her to feel drowsy, are not clear and convincing reasons for finding Plaintiff to be not credible. To the extent the ALJ needed clarification regarding the administration of Plaintiff's medications or the causes of Plaintiff's sleepiness and difficulties concentrating, the ALJ should have developed the record further. *Tonapetyan*, 242 F.3d at 1150.

Finally, the ALJ found that Plaintiff "never had a close attachment to the world of work" and was "unmotivated to work." (AR 20.) The ALJ noted that Plaintiff's earnings history consisted of the following: $218.75 in 1988, $4,259.97 in 1990, and $1090.13 in 1991. (AR 20, 177-78.) An ALJ may draw reasonable inferences regarding a claimant's motivation to work. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (holding that claimant's "extremely poor work history" shows that she has little propensity to work and negatively affects "her credibility regarding her inability to work"). However, "a poor

work history might also support an inference that a claimant's testimony of disability is truthful." *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998). Here, the ALJ erred by relying entirely on Plaintiff's earnings records to support the conclusion that Plaintiff lacks motivation to work. (AR 20, 177-78); *see, e.g., Priest v. Apfel*, 12 Fed. Appx. 445, 446 (8th Cir. 2001) ("It was improper to infer lack of motivation to work based solely on a review of a claimant's earnings records.") There is no indication that the ALJ considered other factors that could have contributed to Plaintiff's poor work history, such as her fibromyalgia and other medical conditions, or Plaintiff's need to care for her son, who suffers from bipolar disorder and has "a lot of issues." (AR 48, 60.) Under these circumstances, Plaintiff's lack of significant prior income is not a clear and convincing reason to reject her credibility. *See, e.g., Cherry v. Apfel*, 5 Fed. Appx. 500, *3 (7th Cir. 2001) ("[H]ere the assessment ultimately rests upon nothing more than a view that [plaintiff] is incredible because she lacks significant prior income, and that view we refuse to endorse"); *Sarchet*, 78 F.3d at 308 (ALJ erred in discounting claimant's credibility based on work history where the ALJ failed to consider the claimant's minimal education, long list of medical ailments, and numerous medications); *Schaal*, 134 F.3d at 502 ("An ALJ should explore a claimant's prior work history to determine whether her absence from the workplace cannot be explained adequately (making appropriate a negative inference) or whether her absence is consistent with her claim of disability.").

Accordingly, Plaintiff is entitled to remand on Issue #2.

## ORDER

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). When no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely

utility of such proceedings"). But when there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.*

The Court finds a remand is appropriate because there are unresolved issues that, when properly resolved, may ultimately still lead to a not disabled finding. *See INS v. Ventura*, 537 U.S. 12, 16, 123 S. Ct. 353 (2002) (upon reversal of administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation") (internal quotation marks and citation omitted). Accordingly, the present case is remanded for further proceedings consistent with this Memorandum and Order.

IT IS THEREFORE ORDERED that a judgment be entered reversing the Commissioner's final decision and remanding the case so the ALJ may make further findings consistent with this Memorandum and Order.

DATED: June 25, 2014

ARTHUR NAKAZATO
UNITED STATES MAGISTRATE JUDGE